UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA M. CATO,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No.  13-cv-04889-KAW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 26 & 31 |

Plaintiff Theresa M. Cato seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings.  Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment.  Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I.  BACKGROUND

On June 29, 2009, Plaintiff Theresa M. Cato filed concurrent applications for Title II Disability Insurance ("DI") Benefits and Title XVI Supplemental Security Income ("SSI") Benefits.  Administrative Record ("AR") 21, 87-88, 151-63.  Plaintiff's applications allege a disability onset date of February 1, 2009. AR 155.  Plaintiff's claims were denied on September 25, 2009. AR 87-88.  Plaintiff's Request for Reconsideration was denied on October 7, 2010. AR 89-90.  A hearing was held before Administrative Law Judge Richard P. Laverdure on September 7, 2011. AR 21-30.  At the hearing, Plaintiff amended her disability onset date to June 5, 2010. AR 21, 49.

Plaintiff is fifty-four years old and lives with her four children. AR 68, 155.  Plaintiff has

not been engaged in substantial gainful activity since June 5, 2010. AR 23.  At the hearing, Plaintiff testified that she had previously worked as a vendor and vending assistant manager at the Oakland Coliseum, as well as a home health aide. AR 49-52.

In May 22, 2008, Plaintiff underwent surgery to remove a bunion on her right foot. AR 292, 481.  In August 2009, Plaintiff presented to medical personnel without complaint or limitation to her lower extremities, as she only complained of right arm pain. AR 462.

On October 10, 2009, Calvin Pon, M.D., performed a consultative orthopedic disability evaluation. AR 318-20.  Plaintiff reported right elbow pain since November 2008, which was work-related from when she was employed as a home health aide providing in-home support services. AR 318.  Plaintiff also reported right little finger numbness since January 2009, which was spontaneous; lower back pain that she has experienced "for a few years" that was also work related; pain in her great right toe, for which she has had operative intervention; and pain in her left great toe, for which she is awaiting operative intervention pending Medi-Cal approval. AR 318.  Dr. Pon opined that Plaintiff ambulates with no ambulatory aid, has normal gait with normal cadence, gait velocity and normal stride length, and walks without a limp. AR 319.  Dr. Pon observed that Plaintiff was able to rise from a chair and stand erect normally, and squat approximately three-quarters of the way down and come to an upright position normally. *Id.*  Dr. Pon's examination revealed that Plaintiff was able to extend both hips to neutral and flex both hips approximately 70 degrees, limited by her lower back pain. *Id.*  Dr. Pon added that Plaintiff presented with a full range of motion of both shoulders, elbows, wrists, and hands except for the right little finger flexion deformity. *Id.*  Plaintiff further presented with manual motor muscle testing of her shoulders, elbows, wrists, and hands of 5/5. *Id.*  The examination was otherwise unremarkable. *Id.*  Dr. Pon opined that Plaintiff can stand and/or walk for six hours during an eight-hour workday, can sit for six hours during an eight-hour workday, and could lift and carry 10 pounds frequently and 20 pounds occasionally. AR 320.

On September 25, 2009, State agency medical consultant J. Bradus, M.D., reviewed Plaintiff's medical records and assessed her functional capacity. AR 321-26.  Dr. Bradus opined that Plaintiff can lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or

walk for about six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. AR 322.  Dr. Bradus also opined that Plaintiff had no manipulative limitations. AR 324.  Dr. Bradus' opinion was re-reviewed by State agency medical consultant Beverly J. Morgan, M.D., following the receipt of additional medical records. AR 409-13.  Dr. Morgan affirmed Dr. Bradus' assessment. AR 410.

On June 29, 2010, Plaintiff complained of foot pain and swelling, but upon examination, the attending physician found Plaintiff without swelling, edema, or tenderness of her extremities and with unremarkable motor and sensory testing results. AR 376, 483-84.

From June 29, 2010 through August 25, 2011, Plaintiff underwent multiple X-Ray images. AR 496-522.  Specifically, X-rays of Plaintiff's thoracic skeleton, lumbovertebral bodies, left knee, and left ankle were unremarkable. AR 512, 520-22.  Plaintiff's cervical spine showed mild degenerative changes with bony spurring and without fractures, malalignment, or pervertebral soft tissue swelling. AR 498.  Plaintiff's right hand showed interphalangeal joint degenerative changes without fracture or malalignment. AR 500.  Plaintiff's right hip showed mild hip joint degenerative changes with bony spurring without fractures or dislocations. AR 499.  Plaintiff's right foot showed degenerative arthritis in the first metatarsophalangeal joint and the internal fixation of hallux vaigus and stable fusion. AR 374, 501, 511, 519.  Plaintiff's left foot showed degenerative arthritis in the first metatarsophalangeal joint, the surgical fixation of the first metatarsophalangeal joint with good alignment and without evidence of hardware failure. AR 374, 497, 502, 504-506, 509, 511, 518.

On August 14, 2010, Aparna Dixit, Psy.D., performed a consultative psychological assessment. AR 392-94.  Dr. Dixit diagnosed Plaintiff with Major Depressive Disorder NOS, but opined that her "psychiatric symptoms do not impinge upon her cognitive status in a significant way at this time." AR 394.  Dr. Dixit opined that Plaintiff has the ability to follow simple instructions, as well as the ability to remember and carryout detailed and complex instructions. *Id.* Additionally, Plaintiff would have no significant difficulty dealing with the public, interacting with coworkers and supervisors, or maintaining attention and concentration for two-hour increments. *Id.* Dr. Dixit noted that Plaintiff's medical condition appeared to be her primary

obstacle to work performance. *Id.*

On September 7, 2010, State agency medical consultant R. Lee, M.D., performed a psychiatric review of Plaintiff's medical records and assessed her mental functional capacity. AR 395-408. Dr. Lee diagnosed Plaintiff with Major Depression NOS, and opined that Plaintiff experienced moderate restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. AR 403. Dr. Lee further opined that Plaintiff experienced moderate limitation in her ability to respond appropriately to changes in the work setting, in her ability to maintain her attention and concentration for extended periods, and in her ability to complete a normal workweek without interruptions. AR 406-07. Plaintiff's social functioning limitations include interacting appropriately with the public, as well as working with supervisors and coworkers. AR 407.

On April 21, 2011, Plaintiff underwent a left first metatarsophalangeal joint fusion for her Hallux rigidus, which, according to treatment notes, was subsequently healing within normal limits and without pain. AR 467-69.

On September 6, 2011, Marilyn McCartney, M.D., Plaintiff's treating physician, filled out a Physicians Medical Source Statement. AR 527-31. Therein, Dr. McCartney identified Plaintiff's diagnoses as arthritis, tendonitis, and degenerative joint disease, and rated her prognosis as "fair." AR 528. Dr. McCartney listed Plaintiff's objective signs and findings as reduced range of motion in the arm, hand, knees, and feet; trigger points; joint deformity; swelling; reduced grip strength; muscle weakness; tenderness; and abnormal gait. AR 528. Dr. McCartney stated that despite symptoms of Depression, anxiety, and memory deficits, that Plaintiff can perform "low stress" jobs. AR 529. Dr. McCartney further opined that Plaintiff can sit for two hours and stand for thirty minutes before needing to change positions. *Id.* Dr. McCartney stated that Plaintiff needed a job that permitted shifting positions at will from sitting to standing, as well as frequent breaks during an eight-hour workday. AR 530. Plaintiff has the ability to carry less than ten pounds rarely, and can rarely twist, stoop, crouch/squat, climb ladders, and climb stairs. AR 530-31.

In an October 17, 2011 decision, the ALJ found that Plaintiff was not disabled. AR 21-

30.  On July 24, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 15.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on June 20, 2013.  AR 4-9.  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

On August 23 and November 3, 2014, the Court issued orders to show cause why Plaintiff's case should not be dismissed for failure to prosecute. (Dkt. Nos. 23 & 25.)

On December 16, 2014, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 26.).  Thereafter, the Court discharged its orders to show cause. (Dkt. No. 30.)

On February 12, 2014, after obtaining an extension, Defendant filed its opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 31.)  Plaintiff did not file a reply, so the motions are fully briefed.

## II.   LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.*  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment

or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.  THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2012. AR 23.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 5, 2010. AR 23.

At step two, the ALJ found that Plaintiff's severe impairments were bilateral degenerative arthritis of the feet and status post healed fracture in the right foot. AR 23. The ALJ determined that Plaintiff's major depressive disorder was not proven to cause more than a minimal limitation in her ability to perform basic mental work activities, and is, therefore, nonsevere. AR 23-24. Additionally, the ALJ determined that there was insufficient objective medical evidence to support that any limitations concerning Plaintiff's dominant right hand, lower back, hip, or neck, even in combination, had more than a minimal effect on her ability to work. AR 25. Further, as conceded

by Plaintiff's counsel at the hearing, Plaintiff's upper extremity problems were very recent, not developed in the record, and may be resolved with an upcoming medical procedure. AR 25, 64, 66.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 25.

At step four, the ALJ concluded that Plaintiff has the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she cannot climb ropes, ladders or scaffolds; can occasionally stoop; and can sit and stand for six hours in an eight-hour workday with a brief hourly change of position. AR 26.

At step five, the ALJ found that Plaintiff is unable to perform any past relevant work. AR 28-29.

Plaintiff was born in 1960, and was 48 years old on the date the applications were filed, which is defined as an individual closely approaching advanced age. AR 29. Plaintiff has at least a high school education and is able to communicate in English. *Id.* Transferability of job skills was not material because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. *Id.* Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 29-30. Therefore, Plaintiff was not disabled within the meaning of the Social Security Act. AR 30.

## IV. DISCUSSION

Plaintiff makes two arguments in her motion for summary judgment: (1) that the ALJ rejected her treating medical source's opinion without providing specific and legitimate reasons supported by medical evidence; and (2) that the ALJ erred when he determined that Plaintiff has the residual functional capacity to perform the jobs identified by the vocational expert. (*See* Pl.'s Mot. at 4, 9, 11-12, 15.)

The Court will address each argument in the order of the five-step evaluation. There is no

dispute that Plaintiff is not currently engaged in a substantial gainful activity, and so the analysis proceeds to step three to determine whether she is disabled.

### A. ALJ gave proper credit to Plaintiff's treating medical source's opinion.

The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted).

#### i. The ALJ properly assessed Dr. McCartney's Opinions.

Plaintiff contends that the ALJ discounted Dr. McCartney's opinion without providing specific reasons supported by substantial evidence in the record. (Pl.'s Mot. at 15.)

The ALJ specifically stated that he was only according Dr. McCartney's opinion "some weight, as far as it is consistent with the RFC, because [it] is not well supported by medically acceptable clinical and laboratory diagnostic techniques, is inconsistent with other substantial evidence in the record, and does not establish a basis for the opinion." AR 28. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001)). The ALJ gave Dr. McCartney's opinion less weight, because she failed to establish a basis for her opinion. For example, Dr. McCartney's progress notes for Plaintiff's first visit, dated March 30, 2010, appear to simply list Plaintiff's subjective complaints rather than any evidence to substantiate her complaints. AR 439-40. Notwithstanding, those notes indicate that Plaintiff's

8

"musculoskeletal/extremities" were within normal limits. AR 439.

Further, ALJ stated that the medical record as a whole did not support Dr. McCartney's opinion, because it was inconsistent with medically acceptable clinical tests. AR 28. Specifically, in September 2011, Dr. McCartney reported the following findings: "joint deformity," "swelling," "muscle weakness," and "abnormal gait." AR 528. From June 2010 through August 2011, Plaintiff underwent multiple X-Rays, which revealed minimal degenerative changes to her extremities. *See* AR 498-506, 511, 520-22. Similarly, at the orthopedic examination conducted by Dr. Pon, Plaintiff exhibited no greater limitations. AR 318-20. The ALJ concluded that the medical opinion of Dr. Pon was more consistent with the record, such that his opinion was entitled to greater weight. AR 27-28.

Lastly, the ALJ reasoned that "much of Dr. McCartney's opinion includes upper extremity, back, and neck limitations that were not alleged as impairments, and are not supported by objective evidence. . . ." AR 28. Dr. McCartney's physician's medical source statement, dated September 6, 2011, listed limitations that were never alleged as impairments, including the upper extremity limitations that Plaintiff's counsel conceded at the hearing were very recent, not developed in the record, and may be resolved with an upcoming medical procedure. AR 25, 64, 66. Moreover, even with these additional limitations, Dr. McCartney did not conclude that Plaintiff was unable to work. Rather, she opined that Plaintiff could perform low stress jobs that permitted her to shift from sitting to standing at-will. AR 529-30. Thus, Dr. McCartney's opinion was that Plaintiff was able to work so long as she was granted certain workplace accommodations. *Id.*

Accordingly, the ALJ had sufficient evidence to accord less weight to Dr. McCartney's opinion, because it was not supported by other substantial medical evidence in the record.

      **ii.**    **The ALJ properly found Plaintiff's allegations not credible.**

To the extent that Plaintiff may be attempting to argue that the ALJ erred in finding her subjective complaints not credible, she fails on the grounds that the competent medical evidence in the record does not support her subjective allegations of greater limitations. Disability benefits cannot be granted based only on a claimant's subjective complaints. *See* 42 U.S.C. §§ 416

1   (d)(5)(A), 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone
2   be conclusive evidence of disability").  In evaluating the credibility of a claimant's testimony
3   regarding subjective pain, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue,* 504
4   F.3d 1028, 1035-36 (9th Cir.2007). "First, the ALJ must determine whether the claimant has
5   presented objective medical evidence of an underlying impairment which could reasonably be
6   expected to produce the pain or other symptoms alleged." *Id.* at 1036. The claimant is not required
7   to show that her impairment "could reasonably be expected to cause the severity of the symptom
8   she has alleged; she need only show that it could reasonably have caused some degree of the
9   symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ
10  can only reject the claimant's testimony about the severity of the symptoms if he gives "specific,
11  clear and convincing reasons" for the rejection. *Id.*  The ALJ must specify what testimony is not
12  credible and identify the evidence that undermines the claimant's complaints; general findings are
13  insufficient. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

14  Here, the ALJ found that the objective medical evidence diminished the credibility of
15  Plaintiff's allegations regarding the severity of her symptoms and limitations, because they were
16  in excess of a level consistent with the medical evidence. AR 27; *see Rollins v. Massanari*, 261
17  F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole
18  ground that it is not fully corroborated by objective medical evidence, the medical evidence is still
19  a relevant factor in determining the severity of the claimant's pain and its disabling effects.").  For
20  example, Plaintiff underwent two surgical interventions for a bunion in her right foot and joint
21  pain, and the record indicates she was healing within normal limits and without pain. AR 27, 292,
22  467.  Furthermore, in June 2010, Plaintiff presented at Alameda County Medical Center
23  complaining due to lightheadedness during her Curves exercise class. AR 483.  She also
24  complained of foot pain and swelling, but upon examination, the attending physician found
25  Plaintiff without swelling, edema, or tenderness of her extremities and with unremarkable motor
26  and sensory testing results. AR 28, 483-84.  Lastly, Dr. Pon and the State agency reviewing
27  physicians all concurred that Plaintiff could perform light work. AR 27-28, 320-26, 329, 409-13.
28  The ALJ further noted that Plaintiff's inconsistent statements undermined her credibility.

AR 28; *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct"). Specifically, the ALJ stated that he found Plaintiff's testimony that she quit her job due to back and neck pain not credible due to her failure to allege back and neck pain in her applications for benefits. AR 28, 61, 189, 278-81. At the hearing, Plaintiff initially stated that she could not work because of hand pain, and only included neck and back pain after being prompted by counsel. AR 60-61. Plaintiff further testified that she injured her back in 2008 while lifting a home healthcare client who weighed 235 pounds. AR 61-62. This alleged injury not only predated her application date, but was also not included in her hearing brief. AR 278-81. While Dr. Pon acknowledged that Plaintiff experienced some chronic back pain, he opined that she should still be able to stand and/or walk for a total of six hours during an eight-hour work day. AR 320. In fact, even Dr. McCartney's medical source statement stated the Plaintiff could work with some modification, including a sit/stand option. AR 530. Thus, Plaintiff's recent claims that her back and neck pain preclude employment is inconsistent with the medical evidence.

Therefore, the ALJ provided specific, specific and convincing reasons to undermine the claimant's subjective complaints.

### B. The ALJ did not err is determining that jobs existed that Plaintiff could perform given her Residual Functional Capacity.

Plaintiff contends that the ALJ erred in finding that there were jobs that existed in the national economy that she could perform given her Residual Functional Capacity ("RFC"). (Pl.'s Mot. at 4.) A Social Security claimant's RFC is what the claimant is capable of doing despite his or her mental and physical limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir. 2001). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The ALJ must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into account a claimant's limitations is defective." *Valentine*, 574 F.3d at 690. The ALJ's findings may be set aside if not supported by substantial evidence. *McCartey v. Massanari*, 298

F.3d 1072, 1075 (9th Cir. 2002); *Smolen*, 80 F.3d at 1279. An ALJ may omit limitations arising out of a claimant's subjective complaints only if the subjective complaints have been properly discredited. *See Lingenfelter*, 504 F.3d at 1040-41 (RFC excluding subjective limitations was not supported by substantial evidence where the ALJ did not provide clear and convincing reasons for discrediting claimant's testimony).

As an initial matter, Plaintiff appears to argue that the ALJ did not include all of her limitations in the RFC, specifically her lower back pain. (Pl.'s Mot. at 9-10.)  Here, the ALJ found that Plaintiff has the RFC to "perform light work . . . except that she cannot climb ropes, ladders or scaffolds; can occasionally stoop; and can sit and stand for six hours in an eight-hour workday with a brief hourly change of position." AR 26.  The RFC did not explicitly include Plaintiff's lower back pain, because it was not listed as an impairment in her applications for benefits, but the RFC provides for posture changes, namely from standing to sitting. AR 28, 278.  The RFC also did not include Dr. McCartney's limitation that Plaintiff must elevate her legs with "prolonged sitting," because the RFC does not require prolonged sitting, and allows for postural changes. AR 28, 530.

Taking Plaintiff's RFC into account, the vocational expert ("VE") testified that an individual with Plaintiff's limitations could not perform Plaintiff's past relevant work. AR 58. Instead, the VE testified that such an individual was capable of working in the light, unskilled position of a counter rental clerk (Dictionary of Occupational Titles ("DOT") code 249.366-010) with approximately 1,900 jobs locally, 14,800 in California, and 109,500 nationally; light, unskilled position of a service sales representative (DOT code 251.375-010) with approximately 400 jobs locally, 2,600 in California, and 17,900 nationally; and light, unskilled position of an office helper (DOT code 239.567-010) with approximately 1,200 jobs locally, 10,000 in California, and 84,100 nationally, to be eroded by 40 percent to account for the sit/stand option. AR 74-86. While Plaintiff questions whether such jobs exist, the ALJ properly relied on the VE's testimony in finding that jobs existed in the national economy in significant numbers that Plaintiff could perform and that she was not disabled. (Pl.'s Mot. at 4, 9-10; AR 29-30.)

Plaintiff also challenges the VE's testimony on the grounds that she does not have the

12

1   skills to perform the unskilled positions cited and that the sit/stand option is inconsistent with the
2   DOT listings. (Pl.'s Mot. at 3-4, 9-10)

### i. Plaintiff has the ability to perform unskilled work

Plaintiff argues that she does not have the skills to perform these positions. (Pl.'s Mot. at 10.) Unskilled work, by its very nature, however, does not require that she currently possess the skills or have prior experience. *See* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). Plaintiff's assertion that she cannot read or write well, and took special education courses, is not only contradicted by her testimony, but does not preclude unskilled employment. At the hearing, Plaintiff testified that she completed the 12th grade and two years of college. AR 59. Plaintiff also testified that, as an assistant manager at the Coliseum, her management responsibilities included hiring and firing employees and inventory ordering. AR 50-52. The VE characterized the skill level of her managerial work as SVP 6, which represents the "mid-level of skilled work." AR 52-53; *see* U.S. Soc. Sec. Admin, Program Operations Manual System ("POMS") DI 25001.001B.76 (Jan. 12, 2015), https://secure.ssa.gov/poms.nsf/lnx/0425001001 (occupations with a Specific Vocational Preparation (SVP) rating of 5 or higher are considered "skilled"). Also Dr. Dixit opined that Plaintiff's psychological assessment revealed that she has no difficulty in following both simple and complex instructions. AR 394. As a result, Plaintiff has failed to identify any reason to question her ability to perform the unskilled work identified by the VE.

### ii. The VE's testimony was not fatally inconsistent with the DOT.

Plaintiff argues that the VE's testimony was inconsistent with the DOT, because the DOT does not explicitly provide for a sit/stand option, and the ALJ did not explain his reasoning about the option. (Pl.'s Mot. at 10-11.) While the DOT is silent with respect to sit/stand options, this does not mean that sit/stand option is not available. Indeed, when there is a conflict between the VE and the DOT, the ALJ must obtain a reasonable explanation and explain how the conflict is resolved. *Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628 (9th Cir. 2011) (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th

Cir.2007). Since the DOT is silent with respect to a sit/stand option, the ALJ specifically asked the VE to explain his basis for his testimony regarding the sit/stand option in light of the fact that it is not contained in the DOT. AR 77. In response, the VE testified that the basis was his 23 years of experience as a vocational counselor and the considerable amount of contact he had with employers in similar types of work settings. AR 77. Thus, the ALJ addressed the DOT's absence of the sit/stand option, and the VE's rationale and expertise. AR 30. Therefore, the conflict between the DOT and the vocational expert was addressed and explained by the vocational expert, and the ALJ addressed this in the decision. *Flores v. Colvin*, 546 Fed. Appx. 638, 640-41 (9th Cir. 2013) (ALJ properly relied on VE because he "testified that although the DOT does not discuss a sit-stand option, his testimony was limited to positions with that option") (citing SSR 00-4p; *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007)). Specifically, the VE testified that jobs that can be performed with a stool[1] would permit Plaintiff to use the sit/stand option to change postures at will. AR 75. The VE further elaborated that the three jobs he identified would accommodate the sit/stand option. AR 77-78. Therefore, the vocational expert sufficiently explained his departure from the DOT in determining that a sit/stand option was available for those unskilled positions, which Plaintiff had the RFC to perform.

Plaintiff does not challenge the VE's qualifications or present any other valid reason to doubt his identification of jobs existing within the framework of the ALJ's hypothetical question. That Plaintiff disagrees with the VE in regards to her ability to perform unskilled work and the availability of the sit/stand option, without citing competent vocational evidence to the contrary, is not evidence of ALJ error. Accordingly, the ALJ properly relied on the VE's testimony.

///

///

///

---

[1] Plaintiff also appears to argue that a stool would not be a reasonable accommodation, because of her back pain, but, as provided above, as of the date of the ALJ's decision, there was insufficient medical evidence to support her subjective complaints of severe back pain. *See* discussion *supra* Parts III & IV.A. If, as suggested by her motion, Plaintiff's condition has worsened since the date of the decision, she must file a new application for benefits. (*See* Pl.'s Mot. at 16-17.)

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: March 31, 2015

_____
KANDIS A. WESTMORE
United States Magistrate Judge